**REDLAND SOCCER CLUB, INC., Dean G. Newhouse, Richard V. Spong, Sr., Robert E. Kane, and Jack H. Hershberger, et al., Plaintiffs,**

v.

**DEPARTMENT OF THE ARMY OF THE UNITED STATES of America, and the United States of America, Defendants.**

**Robert C. O'NEAL, Individually and as Representative of the Estate of Florence M. O'Neal, Decedent, et al., Plaintiffs,**

v.

**DEPARTMENT OF THE ARMY OF THE UNITED STATES of America, and the United States of America, Defendants.**

**Civ. A. Nos. 1:CV–90–1072, 1:CV–90–1073.**

United States District Court,
M.D. Pennsylvania.

Sept. 15, 1992.

---

**1434**

Marvin Beshore, Laurence W. Dague, Glenn R. Davis, Raja G. Rajan, Shumaker Williams, P.C., Harrisburg, Pa., for plaintiffs.

Richard W. Sponseller, U.S. Attys. Office, Harrisburg, Pa., Leslie Yu, Torts Branch, Civil Div., U.S. Dept. of Justice, Margaret Jane Mahoney, U.S. Dept. of Justice, Washington, D.C., J. Patrick Glynn, Wagner Jackson, Robert Lefevre, Wendy L. Weiss, U.S. Dept. of Justice, Torts Branch, Civil Div., Brett P. Scott, U.S. Dept. of Justice, Washington, D.C., Kim D. Daniels, U.S. Attys. Office, Harrisburg, Pa., Stuart M. Gerson, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

We are considering defendants' motion for judgment on the pleadings or, in the alternative, partial summary judgment. Plaintiffs allege certain violations of both federal and state environmental laws [1] and seek both damages and injunctive relief. We have previously dismissed claims for a medical monitoring fund pursuant to CERCLA and for injunctive relief pursuant to the Federal Tort Claims Act. We will consider in turn each of the issues raised in defendants' current motion.

### I. *Timing of Review and 42 U.S.C. § 9613(h)*

Defendants request that we dismiss plaintiffs' citizen suits [2] because we have no subject matter jurisdiction to hear such claims, that jurisdiction being expressly limited by 42 U.S.C. § 9613(h).

### A. *Claims Under CERCLA*

We agree with defendants' assertion that the proper point at which to begin statutory analysis is the plain language of the statute. *In Re Continental Airlines, Inc.*, 932 F.2d 282, 287 (3d Cir.1991). We disagree, however, with defendants' charac-

---

**1.** The suit is brought under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 Pa.Stat. §§ 6020.101–6020.1305.

**2.** 42 U.S.C. § 9659, entitled "Citizens Suits," allows that "any person may commence a civil action on his own behalf ..." to enforce the provisions of CERCLA.

terization of 42 U.S.C. § 9613(h) as "plain and unambiguous."[3] The language of the statute is susceptible to at least two interpretations. The interpretation that defendants offer is that the use of the past tense in § 9613(h)(4) is intended to divest federal courts of jurisdiction over any suit *involving* a site currently being investigated or cleaned up under CERCLA provisions. *Werlein v. United States,* 746 F.Supp. 887, 892 (D.Minn.1990). Another interpretation is that "challenges" as used in the statute refers to suits that question the propriety of Environmental Protection Agency ("EPA") actions taken under CERCLA. Plaintiffs contend that their suits are not challenges to so much as supplementations of CERCLA actions. Viewed in that light, plaintiffs' actions could be seen as parallel cleanup attempts and not challenges at all.

■ We believe that defendants are correct that the general purpose of § 9613 is to narrow federal jurisdiction. *Werlein, supra.* The broad language of the statute indicates such an intent, as does reference to the legislative history:

> It is my understanding that under [§ 9613(h)], no person may bring any lawsuit in any Federal court regarding a federally approved removal or remedial action except when the removal action has been completed or when the remedial action has been taken or secured. "Taken or secured" means that all of the activities set forth in the record of decision which includes the challenged action have been completed. Moreover, there is to be no review of a removal action when

there is to be a remedial action at the site. Thus, for example, review of the adequacy of a remedial investigation and feasibility study, which is a removal action, would not occur until the remedial action itself had been taken.

132 Cong.Rec. 28,440–41 (1986) (statement of Sen. Thurmond).

Both the plain language and the legislative history indicate a broad congressional intent that federal courts not hear such challenges until the remedial actions are complete.

■ Plaintiffs rely on one of the exceptions to § 9613(h) for the proposition that their private cause of action under § 107 of CERCLA is exempted from those dictates. Section 9613(h)(1) allows "an action under section 107 to recover response costs or damages or for contributions." Section 107 allows a private right of action. *McGregor v. Industrial Excess Landfill, Inc.,* 709 F.Supp. 1401, 1409 (N.D.Ohio 1987). However, courts have widely held that that right of action is for private persons to recover monies they have expended to clean up sites or to prevent further releases of hazardous chemicals. As we noted in an earlier memorandum in this case, " 'medical surveillance, health effect studies, and health assessments' are not recoverable response costs under CERCLA." *Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1246 (M.D.Pa.1990) (Conaboy, J.). Plaintiffs in the instant case have not alleged that they have paid for any of the remedial actions contemplated by CERCLA. The private cause of action afforded

---

3. The text of the statute is as follows:
No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 ... or under state law which is applicable or relevant and appropriate under section 9621 of this title ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

. . . . .

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the

removal or remedial action taken under section 9604 of this title ... was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
42 U.S.C. § 9613(h).

by § 107 and referred to in § 9613(h)(1) simply does not include claims of the type plaintiffs here offer. *See also, Daigle, et al. v. Shell Oil and United States,* 972 F.2d 1527 (10th Cir.1992). Therefore, as the exception does not apply, we must follow the mandate of § 9613(h) and dismiss without prejudice the citizen suit portions of plaintiffs' complaints brought pursuant to CERCLA.

### B. *Claims Under HSCA*

■ We are convinced that the same analysis holds true for those parts of the actions brought under 35 Pa.Stat. § 6020.-101, *et seq.* (the HSCA) for injunctive relief. The plain language of the statute divests federal courts of jurisdiction over actions "... under State law ..." 42 U.S.C. § 9613(h). Several courts have assumed that claims brought under state environmental protection statutes must be dismissed along with CERCLA claims where § 9613(h) applies. *Werlein, supra,* at 894; *North Shore Gas Co. v. EPA,* 753 F.Supp. 1413 (N.D.Ill.1990), *aff'd,* 930 F.2d 1239 (7th Cir.1991). Were we to do otherwise, we would frustrate the legislative intent behind § 9613(h).

### II. *Alleged Waiver of Sovereign Immunity*

Plaintiffs argue that the United States has waived its sovereign immunity in 42 U.S.C. § 9620(a)(4). It is clear from the plain language of the statute that § 9620(a)(4) allows suits against the United States pursuant to state environmental statutes. It is, however, unclear whether that provision waives sovereign immunity for cleanups only at sites currently owned or operated by the United States or whether it also waives it for sites owned or operated *at the time of the contamination.* We begin our analysis with the rule that parties bringing actions against the United States bear "the burden of demonstrating an unequivocal waiver of immuni-

ty." *Mitchell v. United States,* 787 F.2d 466, 467 (9th Cir.1986).

The Redland complaint alleges that the Army retains control of Marsh Run Park. Redland First Amended Complaint at ¶ 191. Were this the case, there would clearly be a waiver of sovereign immunity. The applicable sentence of § 9620(a)(4) is in the present tense: "... at facilities owned or operated ..." The next sentence within the same paragraph is undisputably in the present tense: "... to facilities which are not owned or operated ..." Plaintiffs claim that the first sentence is actually phrased in the past tense, thereby allowing imposition of liability for past owners or operators. Common sense and the rules of grammar belie such an assertion. We believe the plain language to mean facilities *currently* owned or operated.

■ Plaintiffs cite *FMC Corp. v. United States Dep't of Commerce,* 786 F.Supp. 471 (E.D.Pa.1992) as authority to the contrary. We find no merit to this argument. In *FMC Corp.,* the court examined federal liability under CERCLA, not under HSCA. It is reasonable to assume that Congress intended broader federal liability under CERCLA than under state environmental statutes. We conclude that the waiver of sovereign immunity in 42 U.S.C. § 9620(a)(4) applies to facilities *currently* owned or operated by the United States.[4]

Plaintiffs assert that dismissal on the pleadings is precluded by their assertion that the Army "assumed possession and control of [Marsh Run Park]" and its implication that Army control continues. We must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to plaintiffs. We agree that this precludes dismissal under Fed.R.Civ.P. 12(c). We turn, then, to an examination under the summary judgment standard. *Bank of Nova Scotia v. Equitable Financial Management,* 882 F.2d 81, 83 (3d Cir.1989).

---

**4.** We are bolstered in this conclusion by the language of § 9607(a)(2), which specifically places liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazard-

ous substances were disposed of ..." If Congress had intended § 9620(a)(4) to mean the same thing, it clearly knew what language to use.

Defendants argue that Fairview Township is now the owner of Marsh Run Park, a fact conceded by plaintiffs in their complaints. Redland First Amended Complaint ¶ 164 ("In 1976, ownership of Marsh Run Park was transferred to Fairview Township under a deed ..."). The question remains, however, whether the Army continues to operate the park.

■ CERCLA does not specifically define "operator." 42 U.S.C. § 9601(20)(A). Courts have developed several tests to determine if a person or entity is an operator. The "Management–Control" test was described in *United States v. Kayser-Roth Corp.*, 910 F.2d 24 (1st Cir.1990):

> To be an operator requires more than merely complete ownership and the concomitant general authority or ability to control that comes with ownership. At a minimum, it requires active involvement in the activities of the subsidiary.

*Id.* at 27. It is clear that, to be held liable as an operator, a party must currently participate in decisions regarding the overall operations at a facility. *Riverside Market Dev. Corp. v. Int'l Building Prod., Inc.*, 931 F.2d 327, 330 (5th Cir.1991); *Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345, 353 (D.N.J.1991).

■ The parties have offered us nothing beyond bare assertions regarding the involvement of the Army at Marsh Run Park ("... the Army does not operate Marsh Run Park as a recreational facility." Def. Reply Memorandum at 8. "... the Army closed Marsh Run Park, placed a cordon around it, and assumed possession and control of it." Redland First Amended Complaint at ¶ 191). Without more in the record, we must conclude that there remains a genuine issue as to a material fact, Fed. R.Civ.P. 56(c), and that summary judgment on this issue would be improper.

III. *Claims for Response Costs/Litigation Expenses*

A. *Expert Fees*

■ Plaintiffs ask that we direct defendants to "pay all costs incurred by Plaintiffs in this litigation, including reasonable attorney and expert witness fees." Redland First Amended Complaint at 46. Defendants first assert that attorney fees are not available as response costs in private-party CERCLA actions, and we find merit in this position. The weight of authority on this point precludes such an award and the legislative history of CERCLA concurs. *Ellman v. Woo,* 1991 WL 274838 at * 6 (E.D.Pa. December 16, 1991); *Fallowfield Development Corp. v. Strunk,* 766 F.Supp. 335 (E.D.Pa.1991).

■ Plaintiffs also make their requests for attorney fees and expert fees under HSCA, 35 Pa.Stat. § 6020.1115(b). The language of that statute does not support plaintiffs' interpretation. The relevant section, § 6020.702(a), allows recovery of "(3) Other reasonable and necessary or appropriate cost of response incurred by any other person." Courts have implied a private cause of action from this provision. *E.g. Toole v. Gould, Inc.,* 764 F.Supp. 985 (M.D.Pa.1991). It is clear, however, that private recovery is allowed only for "costs of response." We look then at the statute's definition of "response." No language in that definition, 35 Pa.Stat. § 6020.103, lends credibility to plaintiff's claim for attorney fees. Further, HSCA expressly allows the Commonwealth to recover legal fees. § 6020.507(b). Certainly, had it so intended, the legislature could have included a legal fee provision for private suits. It did not and we will not imply one. The request for attorney fees in Counts I and II of both complaints will, therefore, be dismissed.

■ Plaintiffs also request that defendants bear the cost of plaintiffs' expert witnesses. Defendants argue that fees for expert witnesses are litigation costs, and that they are not compensable under CERCLA. We agree. In *Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468 (D.Colo. 1991), the court held that "[a] plaintiff who has incurred no costs, except for litigation expenses, prior to the filing of a CERCLA action has incurred no 'necessary costs of response' under § 9607(a)." *Id.* at 1476. Response costs under CERCLA refer to expenses of cleanup, not the expenses of preparing for a lawsuit.

### B. *Health Risk Assessments*

Plaintiffs argue that they have incurred great expense for the preparation of formal health risk assessments. For the same reasons we cited earlier, we do not believe Congress intended such costs to be included in "response costs" when it enacted CERCLA. The statutory definition of response is "remove, removal, remedy, and remedial action ..." 42 U.S.C. § 9601(25). The definitions of remove, removal, remedy, and remedial action uniformly refer to acts involving cleanup of hazardous sites or assessment of environmental damage at those sites. There is no indication that Congress meant to include health risk assessments in the category of response costs. *Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233, 1247 (M.D.Pa.1990) (Conaboy, J.); *Coburn v. Sun Chemical Corp.*, 19 Envtl.L.Rep. 20256, 1988 WL 120739 (E.D.Pa.1988).[5] Plaintiffs argue that summary judgment is precluded when there is a claim of specific response costs, citing *Joy, supra.* We find no merit in this argument. Dismissal is appropriate where, as a matter of law, plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). We find that to be the case here. We will, accordingly, dismiss the claim for the costs of health risk assessment.

### C. *Water Provision in O'Neal Complaint*

Plaintiffs claim as response costs their expense in supplying water to each of several houses after plaintiffs' wells were determined to be contaminated. As defendants concede, provision of alternative water supplies *is* a recoverable response cost. 42 U.S.C. § 9601(23). Defendants offer affidavit testimony of a United States Army chemical engineer that plaintiffs were provided with bottled water at government expense immediately after their wells were found to be contaminated. Aff. of Catherine Johnson at ¶ 5. Plaintiffs claim to have water procurement costs beyond those covered by the Army. There is, then, a dispute over a material fact that will preclude summary judgment on this issue. Fed. R.Civ.P. 56(c).

We will issue an appropriate order.

### ORDER

AND NOW, this 15th day of September, 1992, upon consideration of defendants' motion for judgment on the pleadings or, in the alternative, for partial summary judgment, it is ordered as follows:

1. The motion to dismiss the citizens suits in Counts I and II of the complaints is granted.

2. The motion for partial summary judgment based on sovereign immunity is denied.

3. The motion for dismissal of claims for response costs in Counts I and II is granted in part and denied in part. Those portions of the complaint requesting as CERCLA response costs attorneys fees, expert witness fees, and health risk assessments are dismissed.

4. In all other respects, the motion is denied.

---

5. Indeed, in another context, plaintiffs cite *Joy v. Louisiana Conference Association of Seventh Day Adventists, et al,* 1992 WL 165670, 1992 U.S.Dist. LEXIS 9901 (E.D.La. July 6, 1992).

The court in *Joy* noted that necessary response costs are those "expenses incurred by a party seeking to remove or otherwise remedy the hazard." *Id.*