**ROSPATCH JESSCO CORPORATION, Plaintiff,**

v.

**CHRYSLER CORPORATION, Les Aspin, Secretary, United States Department of Defense, and Michael B. Donley, Acting Secretary, United States Air Force, Defendants.**

No. 4:93–CV–47.

United States District Court, W.D. Michigan, S.D.

Aug. 23, 1993.

---

Joseph F. Galvin, Miller, Canfield, Paddock & Stone, Detroit, MI, Michael B. Ortega, Ronald E. Baylor, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for plaintiff.

Steven C. Kohl, Howard & Howard, PC, Bloomfield Hills, MI, for Chrysler Corp.

Michael L. Shiparski, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, MI, John Z. Lee, John C. Nagle, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Washington, DC, David R. Vecera, Major, Air Force Legal Services Agency, Environmental Litigation Branch, Arlington, VA, for Les Aspin.

Michael L. Shiparski, Asst. U.S. Atty., Grand Rapids, MI, John Z. Lee, John C. Nagle, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, David R. Vecera, Major, Air Force Legal Services Agency, Environmental Litigation Branch, Arlington, VA, for Department of Defense and Michael B. Donley, U.S. Air Force.

## OPINION

ROBERT HOLMES BELL, District Judge.

The question presented in this environmental action is whether section 120(a)(4) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9620(a)(4), allows the United States of America to be sued under state environmental law for its prior ownership and operation of a facility that released hazardous substances. For the reasons stated below, this Court must answer the question in the negative.[1]

### Background

Rospatch Jessco Corporation is a furniture manufacturer in Dowagiac, Michigan. Rospatch Jessco has incurred costs in connection with a clean up of soil and groundwater contamination at its facility and surrounding areas (the "Site").[2]

Rospatch Jessco believes that the United States Air Force ("Air Force") is one of the parties responsible for the contamination at the Site. According to Rospatch Jessco, the Air Force was an owner and/or operator of the Site from about 1951 to 1954. Rospatch Jessco alleges that the Air Force "exercised substantial control over and participation in the Site, including involvement in directing, designing, and supervising operations, and the generation and disposal of waste materials" during those times. Complaint ¶ 17.

Rospatch Jessco further believes that Congress has waived the Air Force's sovereign immunity to the federal and state law environmental claims relating to its ownership and/or operation of the Site from about 1951 to 1954. Rospatch Jessco has thus brought four claims against the Air Force, in the name of Les Aspin, Secretary of the United States Department of Defense, and Michael B. Donley, Acting Secretary of the United States Air Force (collectively the "United States").

These claims are as follows:

Count I: a response cost claim under CERCLA, 42 U.S.C. § 9607(a);

Count II: a contribution claim under CERCLA, 42 U.S.C. § 9613(f)(1);

Count III: a cost recovery claim under the Michigan Environmental Response Act ("MERA"), Mich.Comp.Laws § 299.612; and

Count IV: a contribution claim under MERA, Mich.Comp.Laws § 299.612c.

On the other hand, the United States does not believe that there has been a waiver of sovereign immunity from these state law MERA claims (Counts III and IV). The United States argues that Congress has not expressly waived the sovereign immunity

---

1. The parties have not requested oral argument in this case. After a review of the briefs and the court file, this Court has determined that oral argument would not materially assist the decisional process. Accordingly, this motion is submitted without oral argument.

2. The Site is not listed on the National Priorities List.

from state law environmental claims against federal facilities under *all* the circumstances; instead, the United States asserts that the language of section 120(a)(4) of CERCLA, 42 U.S.C. § 9620(a)(4), the provision setting forth the waiver of sovereign immunity, allows the government to be sued for "currently owned or operated federal facilities" only. The United States' Brief in Support of Its Motion to Dismiss Counts III and IV of Plaintiff's Complaint at 1.

Accordingly, the United States now seeks dismissal of Counts III and IV in the Complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

### Discussion

#### 1. *Standard of Review*

◼ A district court may decide a motion to dismiss for lack of jurisdiction based on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991). In this case, the United States makes a "facial attack" on the complaint; accordingly the Court has only reviewed the complaint, which was assumed to be true for purposes of this motion. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990).

#### 2. *Sovereign Immunity*

As the Sixth Circuit explained,

[t]he Supreme Court has held that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The doctrine of sovereign immunity serves as a bar to suit against the United States unless the government has explicitly waived sovereign immunity. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

*United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1325 (6th Cir.1993).

The Supreme Court has further declared that:

[t]here is no doubt that waivers of federal sovereign immunity must be "unequivocally expressed" in the statutory text. "Any such waiver must be strictly construed in favor of the United States," and not enlarged beyond what the language of the statute requires. But just as " 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended[,] . . . [n]either, however, should we assume the authority to narrow the waiver that Congress intended.' "

*United States v. Idaho,* —— U.S. ——, ——, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993) (citations omitted).

#### A.

As part of the Superfund Amendments and Reauthorization Act of 1986, section 120(a) of CERCLA, 42 U.S.C. § 9620(a), waives sovereign immunity for "federal facilities." It begins with a broad waiver of immunity regarding the CERCLA claims, stating:

Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title. Nothing in this section shall be construed to affect the liability of any person or entity under sections 9606 and 9607 of this title.

42 U.S.C. § 9620(a)(1).

Later, subsection (a)(4) more specifically provides that the United States may be sued for its ownership or operation of a facility under state law. It states that:

State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement

to such facilities which is more stringent than the standards and requirements applicable to facilities which are not owned or operated by any such department, agency, or instrumentality.

42 U.S.C. § 9620(a)(4).

### B.

Rospatch Jessco and the United States disagree about the import of section 9620(a)(4). Rospatch Jessco contends that pursuant to the "clear" waiver language of section 9620(a)(4), the United States may be sued under state environmental law irrespective of the current ownership or operation status of the facility in question in the litigation. In other words, Rospatch Jessco asserts that the two state law claims under MERA (Counts III and IV) against the United States, which are grounded on the Air Force owning and/or operating the Site from about 1951 to 1954, can be maintained in this action through section 9620(a)(4).

By contrast, the United States argues that the "clear" waiver language of section 9620(a)(4) mandates an opposite result. The United States's position is that section 9620(a)(4) applies to "facilities that are currently owned or operated by the federal government, not to facilities that were owned or operated at some time in the past." The United States' Brief in Support of Its Motion to Dismiss Counts III and IV of Plaintiff's Complaint at 8–9.

### C.

Two federal district courts have so far examined the question of whether section 9620(a)(4) allows the United States to be sued under state environmental law regardless of whether the United States currently owns or operates the facility in question in the litigation. *See Redland Soccer Club, Inc. v. Department of Army*, 801 F.Supp. 1432 (M.D.Pa.1992); *Tenaya Associates Limited Partnership v. United States Forest Service*, No. CV–F–92–5375 REC (E.D.Cal. May 18, 1993). These courts, however, have reached conflicting conclusions.

In *Redland Soccer Club*, the Pennsylvania federal court found that the "waiver of sovereign immunity in 42 U.S.C. § 9620(a)(4) applies to facilities *currently* owned or operated by the United States." 801 F.Supp. at 1436 (emphasis in original). The court explained that both the first and the second sentences of section 9620(a)(4) are in the "present tense," signifying that facilities must be currently owned or operated. *Id.* The court further noted that had Congress intended section 9620(a)(4) to apply to facilities *formerly* owned or operated by the United States, Congress would have—consistent with other similar statutory provision such as 42 U.S.C. § 9607(a)(2)—done so. *Id.* at n. 4.

Reviewing the same statutory provision, the California federal court in *Tenaya Associates* thought otherwise. The court explained as follows:

> Despite the holding of the Middle District of Pennsylvania in *Redland*, this court finds that § 9620(a)(4) unambiguously and unequivocally waives immunity in the case at bar. It is quite clear from the language of § 9620(a)(4) that the waiver expressed therein is meant to include all actions brought against the United States for harms which occur during a time when the United States owns or operates a facility. This reading preserves the present tense wording of the section (i.e. facilities which *ARE* owned or operated by the United States when the harm occurs), and provides the government a very clear limit on the waiver of sovereign immunity. As worded, § 9620(a)(4) specifically maintains sovereign immunity for 'past' harms, i.e. those harms which occurred before the time when the government owned or operated the facility.

*Tenaya Associates*, No. CV–F–92–5375 REC, slip op. at 5 (emphasis and capitalization in original). Accordingly, the court there allowed California state law claims against the United States, which "was an owner/operator of the site during part or all of the period from 1963 through 1972." *Id.* at 2.

After careful review, this Court is persuaded that the view of the Pennsylvania federal court in *Redland Soccer Club* is closer to what Congress meant in enacting section 9620(a)(4). This Court believes that the waiver of sovereign immunity in section

9620(a)(4) applies only to facilities currently owned or operated by the United States.

### D.

The Supreme Court has noted that "the starting point for interpreting a statute is the language of the statute itself." *Hallstrom v. Tillamook County*, 493 U.S. 20, 25, 110 S.Ct. 304, 308, 107 L.Ed.2d 237 (1989). Further, "[a]bsent a clearly expressed legislative intention to the contrary, the words of the statute are conclusive." *Id.* at 28, 110 S.Ct. at 310 (internal quotation marks and citation omitted).

As set forth above, the waiver of sovereign immunity in section 9620(a)(4) contains two sentences. The first sentence provides that state law "shall apply to removal and remedial action at facilities *owned or operated* by a department, agency, or instrumentality of the United States." 42 U.S.C. § 9620(a)(4) (emphasis added). Though the United States, relying in part on *Redland Soccer Club*, argues that the first sentence clearly and unequivocally evinces the congressional intent that section 9620(a)(4) applies only to facilities *currently* owned or operated by the United States, this Court does not find it so. Rather, this Court thinks that the sentence itself, casted in a passive voice, is ambiguous; it is not clear, after a fair reading, whether the sentence means that state law shall apply to facilities *currently* owned or operated by the United States, *formerly* owned or operated by the United States, or both.

The next sentence in section 9620(a)(4) sheds more light, however. Referring back to the first sentence, the second sentence provides that there is no such waiver of sovereign immunity where state law treats federal facilities more stringently than other facilities. But more importantly, in outlining that limitation, the second sentence expressly distinguishes federal facilities with "facilities which *are* not owned or operated by any such department, agency, or instrumentality." *Id.* (emphasis added). In other words, the comparison is casted in the present tense, suggesting that the reference to "facilities owned or operated by the United States" in the first sentence should be construed in the present tense as well.

Moreover, the legislative history of 42 U.S.C. § 9620(a)(4) does not express a contrary legislative intention. Although one of the earlier House Reports for the Superfund Amendments and Reauthorization of 1986, which first introduced the notion of an explicit waiver of sovereign immunity allowing state laws to apply to federal facilities, merely recites the eventual statutory language of section 9620(a)(4), *see* H.R.Rep. No. 253, Pt. 1, 99th Cong., 1st Sess. 95 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2877, the subsequent congressional debates indicate that the waiver provision was enacted to further strengthen the entire clean up program for the *current* federal facilities under section 120 of CERCLA. *See* 132 Cong.Rec. H9561 (daily ed. Oct. 8, 1986) (statement of Rep. Fazio) (primary author of section 120); 132 Cong.Rec. S14895 (daily ed. Oct. 3, 1986) (statement of Sen. Stafford). Nowhere is there any mention of the applicability of that section to those facilities that had been owned and operated by the United States. In short, the legislative history would not support the position that Congress clearly intended section 9620(a)(4) to permit the United States to be sued under state environmental law regardless of whether the United States currently owns or operates the facility in question.

On the other hand, reviewing other provisions within section 9620(a) further supports the interpretation that the waiver of sovereign immunity in section 9620(a)(4) applies to facilities *currently* owned or operated by the United States. Throughout other provisions within section 9620(a), references to federal facilities are expressly casted in the present tense. *See, e.g.*, § 9620(a)(2) (various "guidelines, rules, regulations, and criteria" that are applicable to non-federal facilities would be equally applicable to "facilities which *are* owned or operated by a department, agency, or instrumentality of the United States") (emphasis added); § 9620(a)(3) ("Nothing in this chapter shall be construed to require a State to comply with section 9604(c)(3) of this title in the case of a facility which *is* owned or operated by any department, agency, or instrumentality of the United States.") (emphasis added). Such consistency within a

section suggests that the reference to federal facilities in section 9620(a)(4) should be construed in the present tense as well. *See United States Dep't of Energy v. Ohio,* —— U.S. ——, ——, 112 S.Ct. 1627, 1637, 118 L.Ed.2d 255 (1992) ("The term's context, of course, may supply a clarity that the term lacks in isolation").

In sum, this Court holds that the words of section 9620(a) conclusively indicate that state law shall apply to facilities *which are* owned or operated by the United States.

### E.

But even if the statutory language were deemed to be less than conclusive, this Court's holding would not change. As explained above, the Supreme Court has explained that any waiver of sovereign immunity must be unequivocally expressed in the statute and strictly construed in favor of the United States. *United States v. Idaho,* —— U.S. ——, ——, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993). Accordingly, where there is any ambiguity regarding the extent of a waiver of immunity in the statute, the waiver must necessarily be construed narrowly. *See, e.g., United States Dep't of Energy v. Ohio,* —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992).

Consistent with that teaching, any ambiguity that may exist in section 9620(a)(4) cannot be construed broadly as allowing all state environmental law claims to be brought against the United States, regardless of the current status of the United States' ownership or operation of the facility in question. Rather, the narrower interpretation that the waiver of sovereign immunity in section 9620(a)(4) applies only to facilities currently owned or operated by the United States is appropriate.[3]

### Conclusion

For the reasons set forth above, the United States' motion to dismiss Counts III and IV for lack of subject matter jurisdiction

under Fed.R.Civ.P. 12(b)(1) is hereby GRANTED. Counts III and IV against the United States shall be DISMISSED.

An order consistent with this opinion shall issue forthwith.

### *ORDER*

In accordance with the opinion entered this date;

The United States of America's motion to dismiss Counts III and IV for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) (docket # 10) is hereby GRANTED. Counts III and IV against the United States shall be DISMISSED.

IT IS SO ORDERED.

---

3.  Rospatch Jessco suggests that such an interpretation is one born from an "extremely technical" reading of the statute. This Court does not agree. The narrow interpretation is mandated by the consistent Supreme Court teaching on the construction of the statutory waivers of sovereign immunity.