**GENERAL MOTORS CORPORATION, and Honeywell International, Inc.,**
Plaintiffs,

v.

**HIRSCHFIELD STEEL SERVICE CENTER, INC., Alro Steel Corporation, Omnisource Corporation, Monitor Sugar Company, Kuhlman Electric Corporation, Waste Management, Inc., The Dow Chemical Company, United States Army Corps of Engineers and Lee Wood Contracting, Inc.,**
Defendants.

No. 05–10009–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Nov. 8, 2005.

David L. Tripp, Kathryn J. Humphrey, Dykema Gossett, Detroit, MI, for Plaintiffs.

Matthew R. Oakes, U.S. Department of Justice Environment Defense, Washington, DC, Michael J. Hluchaniuk, U.S. Attorney's Office, Bay City, MI, for Defendants.

***OPINION AND ORDER GRANTING DEFENDANT UNITED STATES ARMY CORPS OF ENGINEERS' MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO STATE COURT***

LAWSON, District Judge.

Before the Court is the motion for summary judgment filed by defendant United States Army Corps of Engineers. The question presented by the motion is whether, by enacting and amending the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.,* or any other federal legislation, the federal government has waived its sovereign immunity for lawsuits by private parties seeking to recover civil damages in the form of contribution for the costs of remediating past environmental contamination. This question has divided federal courts across

the country, primarily because the statutory text does not clearly state such a waiver, although the legislative history suggests that a waiver for past contamination clean-up costs may have been intended. However, because of the clear precedent that requires waivers of sovereign immunity to be plainly and unambiguously expressed, the Court holds that the RCRA in its present form does not constitute a waiver of the government's immunity from lawsuits such as the one now before the Court in which the plaintiffs seek contribution for the costs of environmental remediation. The Court, therefore, will grant the Corps' motion for summary judgment, and since there are no longer any federal claims pending and the federal defendant is dismissed from the suit, the Court will remand the case to the Bay County, Michigan circuit court from whence it was removed.

## I.

The plaintiffs filed this complaint against several defendants to recover contribution for remediation costs and expenses incurred by the plaintiffs in the execution of a consent decree prescribing their response to the environmental contamination of a forty-acre site on Middleground Island. That island is located in the Saginaw River within the city limits of Bay City, Michigan. According to the complaint, part of the island was used as a landfill from the early 1950s until 1984 for the disposal of general refuse. The site was owned by the City of Bay City from the early 1950s. The defendant Corps of Engineers also allegedly used the site to deposit tailings from dredge work intended to maintain the navigability of the Saginaw River and the southern end of Saginaw Bay. The plaintiffs allege that Bay City applied a five-foot-thick clay cap over the refuse site, and the Corps deposited dredge material into a basin where the sediments were dewatered and later used as the cover for the landfill.

Some time in the 1990s, the Michigan Department of Environmental Quality (MDEQ) declared that the Middleground Island site was a contaminated landfill. Apparently, the plaintiffs, General Motors Corporation and Honeywell International Incorporated, contributed to the pollution of the site during the time it was used as a landfill. Subsequently, the MDEQ notified the plaintiffs of their potential responsibility for contaminating the landfill with hazardous substances and their liability to remediate under Michigan Natural Resources and Environmental Protection Act (NREPA), Mich. Comp. Laws § 324.101 *et seq.* In August 1998, the plaintiffs entered into a consent decree with the Michigan agency requiring a remedial investigation, action plan, and response actions. The plaintiffs allege that they continue to bear the expenses for that ongoing activity.

On October 1, 2004, the plaintiffs filed suit in the Bay County, Michigan circuit court alleging a claim under Part 201 of Michigan's NREPA to recover past and future response costs for actions taken at the landfill. The plaintiffs allege that the defendant Corps of Engineers is liable for costs of managing the hazardous waste contamination. The Corps filed a notice of removal in this Court on January 14, 2005, followed by a motion to dismiss dated March 21, 2005 alleging that the plaintiffs failed to plead waiver of sovereign immunity by the governmental defendant. The Corps also contends that the United States has not consented to suit under the plaintiffs state law theory for the cost of remediating past contamination.

The plaintiffs filed a response alleging that the federal government has waived sovereign immunity for these state law claims under the Comprehensive Environ-

mental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.*, and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.* The Corps filed a reply, and the Court heard the parties' arguments in open court on June 15, 2005.

## II.

The Corps' motion to dismiss is framed as a defect in pleading that prevents the plaintiffs from proceeding: the failure to plead waiver of sovereign immunity, the Corps claims, requires dismissal. *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that federal courts have no subject matter jurisdiction to hear a claim against the United States or one of its agencies absent a clear waiver of sovereign immunity); *Warminster Twp. Mun. Auth. v. United States*, 903 F.Supp. 847, 849 (E.D.Pa.1995) (stating that a plaintiff is "required to set forth in the complaint the specific statute containing a waiver of the government's immunity from suit"). The plaintiffs respond with a request to amend to so plead, which normally would be allowed at this stage of the proceedings under the liberal amendment rules. *See* Fed.R.Civ.P. 15(a); *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir.2005). The core legal question, however, emerges from the observation that the amendment might be futile if no waiver of immunity can be discerned from the applicable legislation, which is the main focus of this opinion.

■ The Court begins with the well-established proposition that a claim against the United States for money damages is barred absent a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Such a waiver cannot be implied; it must be "unequivocally expressed in the statutory text." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). The Supreme Court has applied these rules when interpreting sovereign immunity waivers under federal environmental statutes in the context of actions against federal defendants under state laws allowing suits for contribution for remediation costs. *See Dep't. of Energy v. Ohio*, 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (finding that RCRA did not waive sovereign immunity for civil penalty claims for past violations), *overruled by* Federal Facility Compliance Act of 1992, PL 102–386, 1992 H.R. 2194 (1992).

■ The plaintiffs contend that CERCLA is one, but "not the only statute," Pls.' Br. Opposing Mot. at 4, in which the United States made an explicit waiver of governmental immunity. Congress enacted CERCLA to provide an impetus for the cleanup of hazardous waste sites and a means of allocating the costs of remediation among responsible parties. *See United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1416–17 (6th Cir.1991). The immunity waiver sections of that legislation read:

> Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, *this chapter* in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title. Nothing in this section shall be construed to affect the liability of any person or entity under sections 9606 and 9607 of this title.

42 U.S.C. § 9620(a)(1) (emphasis added).

> State laws concerning removal and remedial action, including State laws re-

garding enforcement, shall apply to removal and remedial action *at facilities owned or operated by a department, agency, or instrumentality of the United States* or facilities that are the subject of a deferral under subsection (h)(3)(C) of this section when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to facilities *which are not owned or operated* by any such department, agency, or instrumentality.

42 U.S.C. § 9620(a)(4) (emphasis added).

Courts have interpreted the italicized language quoted above as limiting the waiver of sovereign immunity to cases in which the government releases hazardous substances, triggering liability for remediation under section 107, 42 U.S.C. § 9607 (which includes "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe[,] ... any other necessary costs of response incurred by any other person[,] ... damages for injury to, destruction of, or loss of natural resources[,] ... and the costs of any health assessment or health effects study"), from facilities *currently* owned or operated by an agency of the federal government. A growing number of district courts have determined that the CERCLA waiver of sovereign immunity does not allow state law claims against the government for liability based on past ownership or operation of facilities involved in releasing or depositing hazardous wastes. *See Charter Int'l Oil Co. v. United States*, 925 F.Supp. 104, 107 (D.R.I. 1996); *Crowley Marine Servs., Inc. v. Fednav Ltd.*, 915 F.Supp. 218, 222 (E.D.Wash. 1995); *Rospatch Jessco Corp. v. Chrysler Corp.*, 829 F.Supp. 224, 227 (W.D.Mich. 1993); *Redland Soccer Club, Inc. v. Dep't*

*of Army*, 801 F.Supp. 1432, 1436 (M.D.Pa. 1992). *See contra Tenaya Associates Ltd. Partnership v. United States Forest Service*, 1995 WL 433290, *3 (E.D.Cal.1993) (unpublished) (holding that "the United States waives immunity [under CERCLA] whenever it 'owns' or 'operates' a facility at a time when hazardous substances are dumped."). The *Redland* court articulated the rationale for that construction, which has been adopted with near uniformity:

> The applicable sentence of § 9620(a)(4) is in the present tense: "... at facilities owned or operated ..." The next sentence within the same paragraph is undisputably in the present tense: "... to facilities which are not owned or operated ..." Plaintiffs claim that the first sentence is actually phrased in the past tense, thereby allowing imposition of liability for past owners or operators. Common sense and the rules of grammar belie such an assertion. We believe the plain language to mean facilities *currently* owned or operated.

*Redland Soccer Club*, 801 F.Supp. at 1436.

The Court agrees with the reasoning of these cases and concludes that CERCLA does not furnish a clear and explicit waiver of sovereign immunity for the plaintiffs' lawsuit seeking contribution for the response to the past pollution of the Middleground Island site.

■ The plaintiffs' more forceful argument is that a waiver of immunity from lawsuits seeking damages for remediating past pollution can be found in the Resource Conservation and Recovery Act, as amended by the Federal Facility Compliance Act of 1992, Pub.L. No. 102–386, § 102(a)(3), 106 Stat. 1505 (1992). Section 6001 of the RCRA now provides:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal

Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste *shall be subject to, and comply with, all Federal, State, interstate, and local requirements,* both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), *respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges.* The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines, regardless of whether such penalties or fines are punitive or coercive in nature or are imposed for isolated, intermittent, or continuing violations. *The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement* (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge). The reasonable service charges referred to in this subsection include, but are not limited to, fees or charges assessed in connection with the processing and issuance of permits, renewal of permits, amendments to permits, review of plans, studies, and other documents, and inspection and monitoring of facilities, as well as any other nondiscriminatory charges that are assessed in connection with a Federal, State, interstate, or local solid waste or hazardous waste regulatory program. . . .

42 U.S.C. § 6961(a) (emphasis added). The plaintiffs contend that the italicized language constitutes a waiver of immunity for state law actions, such as the present one brought under the Michigan NREPA, to recover response costs incurred in cleaning up hazardous waste sites resulting from past pollution.

The argument has had mixed results in other courts. *Compare Charter Int'l Oil Co.,* 925 F.Supp. at 108 (finding that legislative history demonstrates Congress' "explicit[ ] inten[t] to waive sovereign immunity for past actions of the federal government that violate state hazardous and solid waste laws," such as the Rhode Island Hazardous Waste Management Act and Rhode Island Industrial Property Remediation and Reuse Act), *and Crowley Marine Services, Inc.,* 915 F.Supp. at 222 (holding that "[t]he 1992 amendment [to the RCRA] was a clear effort on behalf of Congress to equally apply environmental standards to private citizens and the federal government . . . [as] evidenced by both the House Committee Report and the Statement by President George Bush Upon Signing H.R. 2194" so that suit under Washington State Hazardous Waste Management Act could proceed), *with Marina Bay Realty Trust, LLC v. United States,* 407 F.3d 418, 423 (1st Cir.2005) (holding that the RCRA does not waive sovereign immunity for private suits seeking money damages), *and McLellan Hwy. Corp. v. United States,* 95 F.Supp.2d 1, 16 (D.Mass.2000) (rejecting reasoning in cases finding waiver of immunity because the waiver language does not plainly encompass response costs), *and Shelton v. Hercules, Inc.,* No. LR–C–97–131, slip op. at 5 (E.D.Ark. Aug. 25, 1997) (unpublished) (same).

The plaintiffs urge the Court to follow *Charter International Oil* and *Crowley Marine Services*. They argue that when the Corps deposited dredge spoils in the Middleground Island landfill sometime before 1984, it "engaged" in an "activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste." 42 U.S.C. § 6961(a). Therefore, they argue, the Corps "[is] subject to, and [must] comply with, all Federal, State, interstate, and local requirements, both substantive and procedural ... respecting control and abatement of solid waste or hazardous waste disposal." 42 U.S.C. § 6961(a). They reason that payment of response costs in a private suit seeking money damages is a "State requirement" to which section 6961(a) refers.

Although a waiver of immunity can be inferred, perhaps, from the statutory language as the plaintiffs contend, the Court does not find that an explicit waiver of sovereign immunity for private suits seeking money damages can be found in section 6961(a)'s words, "The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge)." *See Marina Bay Realty Trust*, 407 F.3d at 423 (making "the obvious" observation that section 6961(a) contains "no express waiver of immunity for private suits seeking money damages"). The *Charter International Oil* and *Crowley Marine Services* courts found a waiver only after consulting the legislative history. They both refer to the House Report on the Federal Facility Compliance Act, which amended the RCRA to make clear that Congress intended to waive the government's immunity for both coercive *and* punitive fines levied by States for failure to comply with state and federal laws regulating the disposal of solid wastes, following the Supreme Court's decision holding otherwise in *Department of Energy v. Ohio*, 503 U.S. at 615, 112 S.Ct. 1627 (holding that the RCRA did not waive sovereign immunity for civil penalties for past violations of the Clear Water Act, the RCRA, or corresponding state laws). That House Report states:

> In the Committee's view the language of the existing law was sufficiently clear to waive federal sovereign immunity for all provisions of solid and hazardous waste laws, including the imposition of criminal fines, civil or administrative penalties and all other sanctions. Thus, this legislation reaffirms existing law, and applies to all actions of the federal government, past and present, which are subject to solid or hazardous waste laws.

H.R.Rep. No. 11, 102d Cong., 2d Sess. 5 (1992) reprinted in 1992 U.S.C.C.A.N. 1287, 1291. After consulting that legislative history, the Rhode Island district court concluded that "the drafters of 42 U.S.C. § 6961(a) explicitly intended to waive sovereign immunity for past actions of the federal government that violate state hazardous and solid waste laws." *Charter Int'l Oil Co.*, 925 F.Supp. at 108. Likewise, after citing the same legislative history, the Washington district court held, "the court finds, based upon the statutory language, as well as the legislative history, that sovereign immunity has been waived by 42 U.S.C. § 6961." *Crowley Marine Servs.*, 915 F.Supp. at 223.

The Court cannot accept the reasoning of those district courts, however, because the waiver of immunity to the extent advocated by the plaintiffs is ambiguous at most. As noted, waivers of sovereign immunity must be "construed strictly in favor

of the sovereign," *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951), and cannot be "enlarge[d] ... beyond what the language requires." *E. Transp. Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). "A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; 'the "unequivocal expression" of elimination of sovereign immunity that we insist upon is an expression in statutory text.'" *Lane*, 518 U.S. at 192, 116 S.Ct. 2092 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

Moreover, it is unlikely that Congress would have waived sovereign immunity for cleanup costs from past pollution in legislation that was "not directed at providing compensation for past cleanup efforts." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). The Supreme Court explained in *Department of Energy v. Ohio* that the purpose of the RCRA is to "regulate[ ] the disposal of hazardous wastes in much the same way [as the Clear Water Act regulates the discharge of pollutants into navigable waters], with a permit program run by the EPA but subject to displacement by an adequate state counterpart." *Dep't of Energy*, 503 U.S. at 611, 112 S.Ct. 1627. The remedies included in the RCRA for violating its regulatory scheme include coercive and punitive fines, mandatory injunctions requiring proper cleanup and disposal of toxic wastes, and prohibitory injunctions forbidding further violations. *Meghrig*, 516 U.S. at 484, 116 S.Ct. 1251. Unlike CERCLA, however, none of the remedies in the RCRA "contemplates the award of past cleanup costs, whether these are denominated 'damages' or 'equitable restitution.'" *Ibid.* In *Meghrig*, the Supreme Court observed that "Congress ... demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy." *Id.* at 485, 116 S.Ct. 1251. It would be unusual indeed for Congress to embed a waiver of governmental immunity for a species of damages in legislation that does not even allow those same damages as a remedy against non-governmental defendants.

For these reasons, the Court concludes that the United States has not waived its sovereign immunity from lawsuits, such as the one now before the Court, in which a private party seeks contribution for the costs of responding to past pollution at sites that are not currently owned or operated by a federal agency. The Corps' motion to dismiss, therefore, will be granted.

### III.

This case was removed from the Bay County, Michigan circuit court on the ground that a federal agency was named as a defendant. *See* 28 U.S.C. § 1442(a)(1) (stating that "[a] civil action ... commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof"). Now that the Corps' motion to dismiss will be granted, no federal defendant remains, and the only claims remaining arise under state law. Title 28, Section 1367 provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

■ In deciding substantive state law claims, it is the obligation of the federal district courts to apply the law of the state's highest court, or to ascertain the state law from all relevant data. *See Central Mich. Bd. of Trs. v. Employers Reinsurance Corp.*, 117 F.Supp.2d 627, 632 (E.D.Mich.2000). There is no good reason for this Court to retain jurisdiction in this case and to engage in the endeavor of determining and applying state law when there are no federal claims remaining in this Court, discovery has not yet commenced, and the litigation is in its initial stages.

■ Where a case against both federal and private defendants has been removed to this Court pursuant to section 1442, and the federal defendant has been dismissed, this Court has discretion to either dismiss the remaining state law claims or to remand them. *See Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir.2000). In exercising that discretion, the Court may consider the convenience of the parties and expeditiousness in resolving the case. *Ibid.* The plaintiffs in this case originally filed the action in the Bay County circuit court, their forum of choice. The Court believes that it is more appropriate to remand the state law claim to the plaintiffs' original forum of choice rather than dismiss it.

## IV.

The Court concludes that sovereign immunity prevents the plaintiffs from proceeding against defendant United States Army Corps of Engineers. The dismissal of that defendant leaves no federal defendant and eliminates the original basis for federal jurisdiction. The Court will exercise its discretion and decline to exercise supplemental jurisdiction over the claims against the remaining defendants.

Accordingly, it is **ORDERED** that the motion by defendant United States Army Corps of Engineers to dismiss [dkt# 8] is **GRANTED.**

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE** as to defendant United States Army Corps of Engineers only.

It is further **ORDERED** that the case is **REMANDED** to the Bay County, Michigan circuit court for further proceedings.