Frank C. GRYGUC et al.

v.

Robert L. BENDICK, Director of the Rhode Island Department of Environmental Management, et al.

No. 84–477–Appeal.

Supreme Court of Rhode Island.

June 11, 1986.

Keven A. McKenna, Providence, for plaintiff.

Charles McKinley, Dept. of Environmental Management, Richard D. Prentiss, Providence, for defendant.

OPINION

BEVILACQUA, Chief Justice.

This is a civil action in which the plaintiffs appeal from a judgment of the Superior Court denying their prayer for declaratory and injunctive relief arising from the issuance of a permit by the defendant Department of Environmental Management (DEM) to the defendant Antonelli Plating Company, Inc., allowing the construction and operation of a hazardous-waste treatment facility in Providence.

The facts are as follows. On May 11, 1982, defendant Antonelli Plating Company, Inc. (hereinafter Antonelli), was granted a zoning variance by the Zoning Board of Review of the City of Providence to construct a water-pollution-control facility on lot No. 311, assessor's plat No. 35 in the city of Providence, also known as 50 Valley

Street.[1]  No appeal was taken from the granting of the zoning variance.

Thereafter on June 2, 1982, Antonelli submitted an application to DEM for a permit to construct a hazardous-waste treatment facility on the premises, which was granted on November 15, 1982, following a public hearing on October 8, 1982.[2]  Subsequently, at another public hearing in March 1983 Antonelli negotiated with the Local Assessment Committee of the City of Providence to obtain a siting agreement for the facility pursuant to G.L. 1956 (1985 Reenactment) § 23–19.7–5.  The siting agreement was later executed on March 30, 1983.[3]

In October 1983 plaintiffs filed suit against defendants alleging that they were property owners[4] within 500 feet of the perimeter of the proposed facility and that they should have received notice from defendants pursuant to § 23–19.1–10(b).  The plaintiffs argued that since DEM failed to give them the requisite notice under the statute, the permit issued by DEM was null and void.  According to defendants' interpretation of the statute, since none of the plaintiffs owned property within 500 feet of the "perimeter of the site of the facility," they were not entitled to notice.  The trial justice agreed with defendants and denied plaintiffs' request for declaratory and injunctive relief.  The plaintiffs thereafter filed this appeal.

The plaintiffs raise two issues for review: (1) whether § 23–19.1–10(b) requires that the perimeter of the site of the facility be measured from the area actually devoted to the treatment of toxic waste or the entire area of the site and (2) whether the notice requirement of § 23–19.1–10(b) is jurisdictional.

## I

Chapter 19.1 of title 23, the hazardous-waste-management act of 1978, was enacted to protect the public and the environment "from the effects of the improper, inadequate, or unsound management of hazardous wastes."  Section 23–19.1–3(1).  Under the statute DEM is given the authority to promulgate regulations with input from other agency officials to control the storage, transportation, treatment, and disposal of hazardous wastes.

Regarding the issuance of permits § 23–19.1–10(b) states:

"Permits issued under this section shall be issued pursuant to rules and regulations promulgated by the director under the authority of § 23–19.1–6.  Prior to issuing a hazardous waste management facility permit, *the director shall issue public notice in a newspaper of general circulation in the area affected and shall notify all persons requesting such notification in writing, all proper-*

1.  Public notice was given and a public hearing was held on May 11, 1982, prior to the issuance of the variance.

2.  Antonelli provided DEM with a list of persons to whom notice was to be given in accordance with G.L. 1956 (1985 Reenactment) § 23–19.1–10(b).  The DEM published notice of the hearing in the September 17, 1982 Providence Journal Bulletin and sent notice by certified mail to various city officials and to seventy-six property owners whose property was within 500 feet of the area where the treatment facility was to be constructed.  None of the plaintiffs in this action received notice and they claim that they have been harmed as a result thereof.  According to defendants, in determining which property owners required notice, they relied upon the land-evidence records in the Providence City Hall.

3.  Two of the plaintiffs, Mr. and Mrs. William Manetta, attended the March 1983 hearing of the siting committee after having read about it in the newspaper.

4.  According to the parties' stipulation of facts:  "(1) Christopher Antonelli is owner of Lot 311, Tax Assessor's Plat 35 in the city of Providence,
(2) William Manetta and Martha Manetta are the owners of property identified as Lot 423, Tax Assessor's Plat 62 of the city of Providence,
(3) Frank C. Gryguc is the owner of the property identified as Lot 603 of Tax Assessor's Plat 33 of the city of Providence,
(4) Albert A. Fregeau is the owner of property identified as Lot 289, Tax Assessor's Plat 35 of the city of Providence."

*ty owners within five hundred feet (500') of the perimeter of the site of the facility by mail directed to the last known address, and the city or town in which the hazardous waste management facility is located and shall hold a public hearing.* Such permits may be issued under conditions of proof of financial responsibility, posting of surety bonds, evidence of adequate liability insurance, or such other conditions as the director by regulation may require." (Emphasis added.)

The plaintiffs contend that the trial justice erred in defining the phrase "perimeter of the site of the facility." They contend that the perimeter should be determined by measuring from their respective property lines to the beginning of defendant's property line, including any and all buildings and parking-lot areas or, at the very least, the portion of the lot where the treatment building is located. The plaintiffs point out that defendant Antonelli, in drawings submitted to DEM in conjunction with the proposed facility, represented that the entire building and the adjacent parking lot constituted the perimeter of the facility.[5] However, defendants contend that the perimeter embraces only the area around the building where the actual treatment operation takes place.

The trial justice considered the testimony of Steven Majkut, DEM's principal hazardous-waste engineer who stated that DEM defines "facility" as the location where hazardous waste is actually stored and treated. Mr. Majkut added that although this was the first time that the phrase "perimeter of the site of the facility" had been construed with regard to a proposed treatment facility, the interpretation adopted by DEM had been applied in approximately fourteen other permit applications for existing treatment facilities.

The trial justice also considered the fact that the Legislature could have specified that the perimeter of the lot would be the point for measuring who would receive notice but chose not to. The court concluded:

"By 'site' the general assembly refers to a land area. The Court finds that, where a facility is located within a building, the entire ground area occupied by any distinct portion of the building *actually used as a treatment facility,* clearly separated from the rest of the building, is included therein and *any immediately contiguous land area necessarily implicated in and accessory to the treatment activity in the building* is also included therein." (Emphasis added.)

The trial justice further found that DEM's interpretation is consistent with the federal definition of "Hazardous Waste Management Facility," which includes "all contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste." 40 C.F.R. § 270.2 (1985).[6]

It is our responsibility in interpreting a legislative enactment to determine and effectuate what the Legislature intended, *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 488 A.2d 676, 679 (R.I. 1985), and to give a meaning "most consistent with its policies or obvious purposes." *City of Warwick v. Almac's, Inc.,* 442 A.2d 1265, 1272 (R.I. 1982). In addition, although not controlling, the interpretation given a statute by an administrative agency will be given great weight. *Berkshire Cablevision,* 488 A.2d at 679.

We accept the trial justice's interpretation of the statute and find that it is supported by substantial evidence. We therefore hold that the "perimeter of the

---

**5.** The defendant Antonelli later submitted a revised map measuring the 500 foot radius from the point of the proposed treatment building.

**6.** Moreover, § 23–19.1–4(7) defines hazardous-waste-management facility as "a facility, excluding vehicles, *for collection, source separation,*

*storage, processing, treatment, recovery, or disposal of hazardous wastes,* or a transfer station for hazardous waste, and may include a facility at which such activities occur and where waste has been generated[.]" (Emphasis added.)

site of the facility" refers to that portion of the premises actually used in the treatment process.

Relying on this definition the record indicates that plaintiffs are not property owners within 500 feet of the perimeter of the site of the facility[7] and therefore were not entitled to notice under the statute.

The plaintiffs' analogy of the notice provisions of the hazardous-waste-management act to the notice requirements of the zoning enabling statute is also flawed. General Laws 1956 (1980 Reenactment) § 45–24–1 confers upon city and town councils the power

> "to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, and to prohibit or limit uses of land in areas deemed to be subject to seasonal or periodic flooding."

The purpose of the zoning statute is to regulate the use of the land. The purpose of the hazardous-waste-management act is to regulate the operations of hazardous-waste-treatment facilities. Section 23–19.-1–3. A hazardous-waste facility will only be allowed to exist on land already zoned for industrial use involving manufacturing processes. *See* § 23–19.7–4(a). Therefore, the first step in any plan to construct a hazardous-waste facility is to obtain the proper zoning.

■ Antonelli followed the proper procedures and obtained a zoning variance in May 1982. The plaintiffs did not participate in the public proceedings. From this point on, the zoning regulations ceased to play a part in the plan to construct the facility. Rather, chapter 19.1 of title 23 and chapter 19.7 of title 23 contain the guidelines that thereafter must be followed in the siting, construction, and operation of a hazardous-waste facility. The record reveals that defendants followed the requisite procedures and that Antonelli received a valid permit from DEM to construct its proposed facility.

## II

Second, plaintiffs assert that the notice requirement of § 23–19.1–10(b) is mandatory, whereby failure to comply with the requirement strips the agency of jurisdiction. The defendants argue that the notice provision is not central to the statutory scheme and thus failure to comply strictly with the requirement did not vitiate DEM's granting of the permit.

■ The trial justice found that the notice and public-hearing provisions of § 23–19.1–10(b) are not of the essence of the act, but are incidental to the regulatory scheme. He determined that the essence or purpose of the act is the regulation by DEM of the statewide management of hazardous wastes.

We hold that the trial justice did not err in his determination. This court has examined the mandatory versus the directory statutory-construction dichotomy in *Town of Tiverton v. Fraternal Order of Police,* 118 R.I. 160, 372 A.2d 1273 (1977). In that case we held that the 120–day-notice provision of G.L. 1956 (1968 Reenactment) § 28–9.2–13, requiring that notice be given by a bargaining agent to the necessary corporate authorities whenever matters regarding appropriation of moneys are the

---

**7.** The record reveals that plaintiff Gryguc's lot No. 603 (which was misnumbered on the assessor's map as lot No. 609) "is within five hundred feet of the exterior wall of the building in which the facility is located, but is more than five hundred feet from the particular portion of the building in which treatment is actually to be carried on. * * * Alfred Fregeau's lot is not within five hundred feet of the perimeter of the building in which the treatment process is to be carried on, let alone the interior portion to be used for treatment or storage. * * * A very small portion of William and Martha Manetta's land lies within five hundred feet of the fenced-in parking area adjoining the waste treatment building"; however this area will not be used in the waste-treatment process.

subject of collective bargaining, is mandatory. "The general rule is that statutory requirements comprising the essence of a statute are mandatory." *Id.* at 164, 372 A.2d at 1275 (citing 2A Sutherland, *Statutory Construction* § 57.03 at 416 (4th ed. Sands 1973)).

A reading of § 23–19.1–3 leads to the conclusion that the health and the safety of the public in conjunction with the proper disposal of hazardous waste are the essence of the statute and that the notice provision contained in § 23–19.1–10(b) is, at best, subsidiary to these concerns. Moreover, the statutory provision in question is directed at public officers, and substantial, though imperfect, compliance will not prejudice private rights or the public interest where the fault of imperfect compliance rests with the public officer. 118 R.I. at 164–65, 372 A.2d at 1275–76. Since notice is not the essence of the statutory scheme of chapter 19.1 of title 23, it is neither mandatory nor jurisdictional.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings consistent herewith.