**CHARTER INTERNATIONAL OIL CO., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

C.A. No. 95–124–P.

United States District Court, D. Rhode Island.

May 7, 1996.

Gerald J. Petros, Hinckley, Allen & Snyder, Providence, RI, David B. Broughel, Kenneth A. Reich, Day, Berry & Howard, Boston, MA, for plaintiff.

David W. Zugschwerdt, U.S. Department of Justice, Environment & Natural Resources, Washington, DC, Everett C. Sammartino, United States Attorney's Office, Providence, RI, Stephanie A. Jirard, U.S. Department of Justice, Civil Division, Torts Branch, Washington, DC, Cecilia E. Kim, U.S. Department of Justice, Environment & Natural Resources, Environmental Defense Section, Washington, DC, for United States of America.

Everett C. Sammartino, U.S. Attys. Office, Providence, RI, David W. Zugschwerdt, U.S. Dept. of Justice, Environment & Natural Resources, Washington, DC, Stephanie A. Jirard, U.S. Dept. of Justice, Civil Div., Torts Branch, Washington, DC, for United States Department of Defense, William Perry, Secretary of Defense, Sheila Widnall, Secretary of Air Force, The United States Air Force, The United States Corps of Engineers, Arthur E. Williams, Commander and Chief of Engineers, United States Corps of Engineers, Earl C. Richardson, Col., Division Engineer, United States Army Corps of Engineers, New England Division.

Adam C. Robitaille, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, Eric E. Grondahl, Jane Kimball Warren, Cummings & Lockwood, Hartford, CT, for Texaco, Inc., Texaco Exploration and Production, Inc., Texaco Refining and Marketing, Inc.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiff Charter International Oil Company ("Charter") has brought suit against the United States, as well as several federal agencies and officials, ("United States") and Texaco, Inc., Texaco Exploration and Production Inc., and Texaco Refining and Marketing Inc. ("Texaco Defendants"). Charter seeks compensation for the cost of cleaning up a contaminated piece of property which Defendants previously owned. Charter has sued under, *inter alia*, Rhode Island's Hazardous Waste Management Act (Count VI) and Rhode Island's Industrial Property Remediation and Reuse Act (Count VIII). Defendants have filed a motion to dismiss Counts VI and VIII, arguing, (1) that the United States is immune from such claims, (2) that the statutes do not apply retroactively, and (3) that the statutes contain no private right of action. For the reasons explained below, this Court finds that Defendants' first two arguments do not constitute a sufficient basis for dismissal of Counts VI and VIII. My ruling on Defendants' third argument is reserved pending resolution of the question certified to the Rhode Island Supreme Court.

### FACTUAL BACKGROUND

Charter currently owns a 106–acre property located in Tiverton, Rhode Island ("Site"). Two parcels of the Site, the "Air Force Parcel" and the "Northwest Parcel," were purchased by Charter's corporate predecessors from the United States in 1968. In 1985, Charter's predecessors obtained several other parcels of the Site from predecessors of the Texaco Defendants. The Site was used historically for bulk petroleum storage and distribution operations, which were terminated in 1986.

Charter investigated the Site and discovered contamination from oil and other wastes. On March 25, 1992, Charter and the Rhode Island Department of Environmental Management (DEM) entered into an administrative consent agreement pursuant to the Rhode Island Oil Pollution Control Act and its implementing regulations. Under the terms of this consent agreement, Charter

was required to remediate the soil and groundwater contamination at the Site.

On March 3, 1995, Charter filed suit against the United States and related parties, including the Department of Defense, the Air Force, and the Army Corps of Engineers. The Texaco Defendants were subsequently added as defendants in this action. Charter alleges that Defendants' use of the Site as a bulk petroleum storage and distribution facility caused the oil and hazardous waste contamination. Charter seeks remediation costs from the United States under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 *et seq.*, and the Defense Environmental Restoration Act (DERA), 10 U.S.C. §§ 2701 *et seq.*, and from all Defendants under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6972, 6973, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607, 9613, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Rhode Island Hazardous Waste Management Act (HWMA), R.I.Gen.Laws § 23–19.1–22, the Rhode Island Industrial Property Remediation and Reuse Act (IPRRA), R.I.Gen.Laws § 23–19.14–6, and state common law equitable indemnity. United States filed, *inter alia,* a motion to dismiss Charter's claims under Rhode Island's HWMA and IPRRA because those statutes do not apply retroactively and contain no private right of action, as well as because the United States has not waived its sovereign immunity for those claims. The Texaco Defendants have joined the portions of the motion pertaining to retroactivity and a private right of action. This motion is now before the Court.

## STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). In the present case, the relevant portion of Defendants' motion to dismiss turns exclusively on statutory interpretation.

Therefore, these issues are appropriate for resolution on the pleadings.

## UNITED STATES' SOVEREIGN IMMUNITY FOR STATE STATUTORY CLAIMS

In this case, Plaintiff has brought claims against the United States under the Rhode Island Hazardous Waste Management Act (HWMA) and the Rhode Island Industrial Property Remediation and Reuse Act (IPRRA). The application of state law to federal government agencies requires an explicit waiver of sovereign immunity. *Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). Plaintiff asserts that the federal government waived sovereign immunity for state hazardous waste laws in the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6961(a), which states:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges.... The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement....

Clearly, HWMA and IPRRA relate to the control and abatement of hazardous waste, within the meaning of this statute. However, the United States argues that the phrase "engaged in any activity" indicates that the waiver of sovereign immunity applies only to agencies that are currently engaged in activity violating state laws. Since the Complaint

alleges that the United States ended its control over the site twenty-eight years ago, Compl. ¶¶ 17, 19, 22, the United States asserts that the RCRA immunity provision does not waive sovereign immunity in this case.

Apparently, no other courts have interpreted this aspect of the sovereign immunity waiver. The United States cites several cases that interpret an analogous provision of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). That section of CERCLA states:

> State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to facilities which are not owned or operated by any such department, agency, or instrumentality.

42 U.S.C. § 9620(a)(4). Several district courts have held that the statutory phrase "owned or operated" includes only those facilities currently owned or operated by the United States. *Crowley Marine Serv., Inc. v. Fednav Ltd.*, 915 F.Supp. 218, 221–22 (E.D.Wash.1995.); *Rospatch Jessco Corp. v. Chrysler Corp.*, 829 F.Supp. 224, 227–28 (W.D.Mich.1993); *Redland Soccer Club, Inc. v. Department of the Army of the United States*, 801 F.Supp. 1432, 1436 (M.D.Penn. 1992). In contrast, a California district court found that "owned or operated" included facilities that had been federally owned or operated at the time that hazardous wastes had been released. *Tenaya Assoc. Ltd. Partnership v. United States Forest Service*, 1995 WL 433290 (E.D.Cal.1993).

However, since Plaintiff has asserted a waiver of immunity under the RCRA provision, not the CERCLA provision, none of these interpretations of CERCLA are dispositive in the present case. The statutory language of the CERCLA provision can be clearly distinguished from the language used in the RCRA immunity provision. Most significantly, the second sentence of the CERCLA provision distinguishes "facilities which *are* not owned or operated" and is clearly in the present tense. 42 U.S.C. § 9620(a)(4) (emphasis added). This leads to the reasonable inference that "facilities owned or operated" in the first sentence means "facilities which *are* owned or operated;" that is, the first sentence refers to facilities currently owned by the government as opposed to facilities previously owned at the time of disposal. Courts interpreting the CERCLA provision have relied heavily on this argument. *See Rospatch*, 829 F.Supp. at 227; *Redland*, 801 F.Supp. at 1436. However, the statute at issue in the present case, 42 U.S.C. § 6961(a), contains no similar clarifying later sentence. Since statutory interpretation necessarily depends largely on the actual language used in the statute, the cases interpreting the CERCLA provision cannot govern the interpretation of 42 U.S.C. § 6961(a).

■ When a statute is facially ambiguous, its intended meaning can often be best discerned from its legislative history. *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320, 327 (1st Cir.1994). When Congress originally passed RCRA in 1976, federal facilities were subject to both federal and state hazardous waste laws. ·S. 2150, 94th Cong., 2d Sess. (1976). However, subsequent court cases interpreted this waiver of sovereign immunity narrowly. *See, e.g., United States Dep't of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (holding that the waiver of sovereign immunity for federal facilities did not apply to punitive fines). Congress rejected this narrower analysis by passing the Federal Facility Compliance Act of 1992, which recognized the serious environmental compliance problems at federal facilities and amended RCRA to permit punitive fines. Pub.L. 102–386, *codified at* 42 U.S.C. § 6961(a); H.R.Rep. No. 11, 102d Cong., 2d Sess. 2 (1992) *reprinted in* 1992 U.S.C.C.A.N. 1287, 1288. The House Report on the Federal Facility Compliance Act states:

In the Committee's view the language of the existing law was sufficiently clear to waive federal sovereign immunity for all provisions of solid and hazardous waste laws, including the imposition of criminal fines, civil or administrative penalties and all other sanctions. Thus, this legislation reaffirms existing law, and applies to all actions of the federal government, *past and present,* which are subject to solid or hazardous waste laws.

H.R.Rep. No. 11, 102d Cong., 2d Sess. 5 (1992) *reprinted in* 1992 U.S.C.C.A.N. 1287, 1291. Thus, the drafters of 42 U.S.C. § 6961(a) explicitly intended to waive sovereign immunity for past actions of the federal government that violate state hazardous and solid waste laws. This interpretation fits with the purpose of the Federal Facility Compliance Act. *Franchise Tax Bd. of Cal. v. United States Postal Service,* 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984) ("[I]ntent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy."). Otherwise, federal facilities would be immune from state hazardous waste laws if they polluted for many years but stopped shortly before suit was filled.

Since the United States' actions alleged in the Complaint clearly fall within the intended scope of 42 U.S.C. § 6961(a), this Court finds that Defendant waived sovereign immunity for Plaintiff's claims under Rhode Island's HWMA and IPRRA. Thus, United States' motion to dismiss cannot be granted on this basis.

*RETROACTIVE APPLICABILITY OF STATE STATUTORY CLAIMS*

The United States argues that Plaintiff's claims pursuant to HWMA and IPRRA must be dismissed because these statutes do not apply retroactively. Plaintiff acknowledges that the United States' ownership or control of the Site ended in 1968, while HWMA was enacted in 1979 and IPRRA was just recently passed in 1995.[1] Therefore, Defendants ar-

gue, Plaintiff cannot use HWMA and IPRRA to recover for contamination that occurred long before the statutes even existed.

 In determining whether a statutory provision should apply retroactively, Rhode Island courts look to the language of the entire statute and to legislative intent. *Van-Marter v. Royal Indemnity Co.,* 556 A.2d 41, 44 (R.I.1989). As a general rule, statutes are presumed to operate prospectively from their effective dates. *Avanzo v. Rhode Island Dep't of Human Services,* 625 A.2d 208, 211 (R.I.1993). However, this general rule applies only when no evidence indicates that the statute was intended to apply retroactively. *Id.* ("There is no indication in the language of the statute that any such retroactive effect was intended."); *see also Taylor v. Rhode Island Dep't of Corrections,* 908 F.Supp. 92, 104–05 (D.R.I.1995) ("No legislative history has been submitted to this Court regarding the legislators' intent."); *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 955 (R.I.1994) ("[W]e find neither statutory language nor legislative intent to apply the statute retroactively."); *Walsh v. Rhode Island Dep't of Transp.,* 637 A.2d 774, 775 (R.I.1994) ("[I]n the absence of specific language or any necessary language to the contrary, we must construe legislative intent to apply the statute prospectively."). For the reasons which follow, I find that IPRRA and HWMA do apply retroactively.

*Industrial Property Remediation and Reuse Act*

 First, I will consider the application of IPRRA. The liability section of IPRRA reads, in part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in section 23–19.14–7, the state of Rhode Island reaffirms the applicable provisions of chapter 23–19.1, section 42–17.1–2, chapter 46–12 and chapter 46–13.1 and defines the following parties as re-

---

1. The Court notes that Texaco Defendants have joined in this portion of the motion to dismiss, even though their property was not transferred to Charter until 1985, after HWMA was passed. The Court assumes that the Texaco Defendants are challenging the applicability of HWMA to any

pre–1979 disposal and the applicability of IPRRA in general. Because I do not grant the motion to dismiss on the basis of retroactivity, *infra,* I need not distinguish between the United States Defendants and the Texaco Defendants.

sponsible parties which are strictly, jointly and severally liable for the actual or threatened release of any hazardous material at a site:

(a) the owner or operator of the site;

(b) *any person who at the time of disposal of any hazardous material owned or operated the site;*

(c) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous materials owned or possessed by such person, at any site owner or operated by another party or entity and containing such hazardous materials; and

(d) any person who accepts or accepted any hazardous materials for transport to disposal or treatment facilities or sites selected by such person, from which there is a release or a threatened release of a hazardous material which causes the incurrence of response costs.

R.I.Gen.Laws § 23–19.14–6 (emphasis added). The plain language of the statute indicates that parties who owned the property when hazardous materials were disposed on it are liable. In addition, IPRRA's legislative findings explicitly mention many previously contaminated sites in Rhode Island which have remained abandoned and unremediated. R.I.Gen.Laws § 23–19.14–1. The purpose of the statute was to clean up and reuse such sites. R.I.Gen.Laws § 23–19.14–1(i).[2] Thus, the legislative intent in passing IPRRA included addressing contamination that had occurred in the past.

Moreover, the definition of responsible parties in IPRRA is almost identical to the definition in the liability section of the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). 42 U.S.C. § 9607(a)(2) ("any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of. . . ."). Where the language of a state law parallels that of a federal law, courts often follow precedent which inter-

prets the federal law. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1156–57 (1st Cir.1989). Courts have overwhelmingly held that CERCLA applies retroactively, so that parties may be liable for hazardous waste disposal that occurred prior to CERCLA's enactment. *See, e.g., O'Neil v. Picillo*, 883 F.2d 176, 183 n. 12 (1st Cir.1989), *cert. denied sub nom., American Cyanamid Co. v. O'Neil*, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 732–34 (8th Cir.1986) (citing additional cases), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). As IPRRA contains the same language that, in CERCLA, has been interpreted to apply retroactively, logically IPRRA must apply retroactively as well.

*Hazardous Waste Management Act*

■ Second, I must address whether HWMA applies retroactively. The liability portion of the HWMA states:

Any person who shall violate the provisions of this chapter through the transportation, storage, or disposal of hazardous wastes in a manner or location not authorized by this chapter or the rules and regulations promulgated pursuant hereto, or who *shall have caused* the unauthorized transportation, storage, or disposal of hazardous wastes shall be absolutely liable for the cost of containment, cleanup, restoration, and removal of the hazardous wastes, and for all damages, losses, or injuries, including environmental, which result directly or indirectly from the discharge.

R.I.Gen.Laws § 23–19.1–22(a). The question is whether the legislature intended the phrase "shall have caused" to include parties who caused unauthorized disposal prior to the statute's enactment. Although the verb was written in the past tense, this alone is not enough to reveal the legislature's intention. *See, e.g., Taylor*, 908 F.Supp. at 104.

However, in its recent drafting of IPRRA, the Rhode Island legislature shed considerable light on its original intention in HWMA. IPRRA's liability section explicitly states:

---

**2.** The passage of IPRRA and its intended purpose was the subject of some publicity. *Abandoned–* *Property Law Has Debut,* Providence J–Bull., July 18, 1995, at B1.

"the state of Rhode Island *reaffirms* the applicable provisions of chapter 23–19.1 [HWMA] ... and defines the following parties as responsible parties...." R.I.Gen. Laws § 23–19.14–6 (emphasis added). The explanation of IPRRA published by the Legislative Council states that, "This act [IPRRA] ... *clarifies* the environmental liability associated with spills and releases of hazardous materials." R.I.S. 612, Ch. 95–187 (1995) (emphasis added). Clearly, the legislature intended the liability section of IPRRA to explain portions of HWMA that may have been unclear. Since IPRRA explicitly refers to previous owners as responsible parties, as discussed above, HWMA must also have been intended to cover past disposal and thus may be applied retroactively.

■ Even if the Rhode Island legislature had not made clear its intent that HWMA apply retroactively, Defendants in this case may still be liable for unauthorized disposal of hazardous waste under HWMA. HWMA defines disposal as "the discharge, deposit, injection, dumping, spilling, leaking, abandoning, or placing of any hazardous waste in, on, into or onto any land, other surface, or building, or into any water, stormwater system, or sewer system...." R.I.Gen.Laws § 23–19.1–4. In this case, Plaintiff has alleged that Defendants stored hazardous waste at the Site, resulting in the release of hazardous wastes into the environment and that hazardous wastes continue to be present at the Site. Compl. ¶¶ 60–63. If the unauthorized disposal in the present case includes continuing leakage of hazardous waste into the environment, then Defendants may be violating HWMA on a continuing basis. Certainly, a significant portion of the present contamination may have leaked from the storage facility after 1979, when the legislature passed HWMA. Liability for such leakage would be a prospective, not retroactive, application of HWMA.

Like HWMA, the federal Resource Conservation and Recovery Act (RCRA) defines "disposal" to include leaking. 42 U.S.C. § 6903(3). Several district courts have held that RCRA applies to sites where the original disposal occurred prior to RCRA's passage but where continuing leakage constitut-

ed post-enactment "disposal" under the plain terms of the statute. *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1436 (S.D.Ohio 1984); *United States v. Price*, 523 F.Supp. 1055, 1071 (D.N.J.1981), *aff'd*, 688 F.2d 204 (3d Cir.1982); *United States v. Diamond Shamrock Corp.*, 12 Envtl.L.Rep. 20819, 20822, 1981 WL 137997 (N.D.Ohio 1981). As one court explained, "To hold that remedial environmental statutes could or should not apply to conduct engaged in antecedent to the enactment of such statutes, when the effects of such conduct create a present environmental threat, would constitute an irrational judicial foreclosure of legislative attempts to rectify pre-existing and currently existing environmental abuses." *Diamond Shamrock*, 12 Envtl.L.Rep. at 20822.

CERCLA adopted the definition of "disposal" set out in RCRA. 42 U.S.C. § 9601(29). The CERCLA statute also uses the term "release," which is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." 42 U.S.C. § 9601(22). As with RCRA, several courts have found that the application of CERCLA to waste disposal that occurred prior to the statute's enactment was not retroactive because liability stemmed from the present and continuing effects of the past conduct, not from the past conduct itself. *Amland Prop. Corp. v. Aluminum Co. of America*, 711 F.Supp. 784, 791 n. 6 (D.N.J.1989); *United States v. South Carolina Recycling & Disposal, Inc.*, 653 F.Supp. 984, 996–97 (D.S.C.1984), *aff'd in part sub nom., United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

Courts have made a parallel analysis with regard to at least one state hazardous waste statute. Pennsylvania has a state Hazardous Sites Cleanup Act which is quite similar to Rhode Island's HWMA. 35 Pa.Cons.Stat. Ann. § 6020.702(a) ("A person who is responsible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for the following response costs and damages which result from the release or threatened release....").

The Pennsylvania statutory definition of "release" includes leaking and discharging. 35 Pa.Cons.Stat.Ann. § 6020.103. Courts have applied this statute to hazardous materials which had been disposed of prior to the statute's enactment but which continued to leak hazardous waste after the enactment. *Pottstown Indus. Complex v. P.T.I. Services, Inc.*, 1992 WL 50084, at *13 (E.D.Pa.1992); *Fallowfield Dev. Corp. v. Strunk*, 1990 WL 52745, at *16–17 (E.D.Pa.1990). "Because of the nature of an improper disposal of hazardous waste, the waste continues to infect the environment until cleaned up or the proper disposal protections are in place. This continued release was clearly contemplated by the language defining 'release' in section 103." *Fallowfield*, 1990 WL 52745, at *17.

In conclusion, in the recent IPRRA statute, the Rhode Island legislature made clear its prior intention that HWMA apply retroactively. However, even had the legislature not intended HWMA to apply retroactively, HWMA could still apply prospectively to the present case to the extent that Plaintiff seeks recovery for continuing leakage that occurred after the statute's enactment in 1979. Therefore, Defendants' motion to dismiss cannot be granted on the basis of improper retroactive application.[3]

### PRIVATE CAUSE OF ACTION UNDER STATE STATUTES

Defendants argue that Counts VI and VIII of the Complaint must be dismissed because no private cause of action exists under HWMA or under IPRRA. I will consider IPRRA first, because that discussion illuminates the analysis of HWMA. For the reasons discussed below, these questions are certified to the Rhode Island Supreme Court.

### Industrial Property Reuse and Remediation Act

The pertinent portion of IPRRA reads:

Responsible parties shall be liable for:

(i) all removal or remedial actions necessary to rectify the effects of a release of hazardous material so that it does not cause a substantial danger to present or future public health or welfare or the environment;

(ii) all costs of removal or remedial action incurred by the state including direct costs, indirect costs and the costs of overseeing response actions conducted by private parties;

(iii) any other necessary costs of removal or remedial action incurred by *any other person;* and

(iv) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

R.I.Gen.Laws § 23–19.14–6 (emphasis added). The liability provision of IPRRA in large part parallels the liability provision of CERCLA. CERCLA holds responsible parties liable for:

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by *any other person* consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(I) of this title.

42 U.S.C. § 9607(a) (emphasis added). Where a state law parallels a preexisting federal law, judicial interpretation of the federal law can prove helpful in analyzing the state law. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1156 (1st Cir.1989). The original form of CERCLA contained no provision for a private cause of action other than § 9607. Pub.L. 96–510; H.R. 7020, 96th Cong., 2d Sess. (1980). In

---

**3.** This Court notes that the circumstances of the present case are very different from the circumstances in its earlier ruling regarding the retroactive application of probation fees in *Taylor v. Rhode Island Dep't of Corrections*, 908 F.Supp. 92 (D.R.I.1995). As recognized by many other courts, and discussed *supra*, the remedial purpose of environmental protection laws changes the context within which legislative intent must be interpreted.

112

1986, Congress amended CERCLA to include a more explicit private cause of action for contribution in § 9613(f). Pub.L. 99–499; H.R. 2005, 99th Cong., 2d Sess. (1986). A recent Supreme Court decision noted that many courts had recognized a private right of action under § 9607 and that later statutory amendments appeared to endorse these decisions. *Key Tronic Corp. v. United States,* —— U.S. ——, ——, 114 S.Ct. 1960, 1965, 128 L.Ed.2d 797 (1994). The Court stated, "Thus the statute now expressly authorizes a cause of action for contribution in § 113 [§ 9613] and impliedly authorizes a similar and somewhat overlapping remedy in § 107 [§ 9607]." *Id.* at ——, 114 S.Ct. at 1966.

Only two circuits addressed the question of a private cause of action under CERCLA § 9607 prior to the 1986 amendments. *Walls v. Waste Resource Corp.,* 761 F.2d 311 (6th Cir.1985). The Sixth Circuit, followed by the Ninth Circuit, held that the statute's clear language imposing liability for "necessary costs of response incurred by any other person" indicated that Congress had envisioned a private cause of action. *Id.* at 317–18; *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 890 (9th Cir.1986). The Sixth Circuit also recognized that district court decisions have been "virtually unanimous" in holding that § 9607 created a private cause of action. *Walls,* 761 F.2d at 318; *see City of No. Miami v. Berger,* 828 F.Supp. 401, 407 n. 7 (E.D.Va.1993); *Kelley v. Thomas Solvent Co.,* 790 F.Supp. 710, 717 (W.D.Mich.1990); *Kalik v. Allis–Chalmers Corp.,* 658 F.Supp. 631, 637 (W.D.Pa.1987); *Artesian Water Co. v. Government of New Castle Cty.,* 605 F.Supp. 1348, 1356 (D.Del.1985); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1428 (S.D.Ohio 1984).

Pennsylvania's Hazardous Sites Cleanup Act parallels the language of Rhode Island's IPRRA, including imposing liability for "other reasonable and necessary or appropriate costs of response incurred by any other person." 35 Pa.Cons.Stat.Ann. § 6020.702(a)(3). The first few federal district courts to interpret Pennsylvania's statute found no private right of action. *Pottstown Indus. Complex v. P.T.I. Services, Inc.,* 1992 WL 50084 (E.D.Pa. 1992); *Lutz v. Chromatex, Inc.,* 730 F.Supp.

1328 (M.D.Pa.1990); *Fallowfield Dev. Corp. v. Strunk,* 1990 WL 52745 (E.D.Pa.1990). However, many subsequent district court decisions have found a private cause of action based on the language quoted above, the statute's similarity to CERCLA provisions, the state environmental agency's interpretation, and the broad policies underlying the statute. *General Elec. Environmental Services, Inc. v. Envirotech Corp.,* 763 F.Supp. 113 (M.D.Pa.1991); *see also Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.,* 891 F.Supp. 221 (E.D.Pa.1995); *Tri–County Business Campus Joint Venture v. Clow Corp.,* 792 F.Supp. 984 (E.D.Pa.1992); *Toole v. Gould, Inc.,* 764 F.Supp. 985 (M.D.Pa. 1991). A Pennsylvania Superior Court also recently addressed this issue for the first time and found that a private cause of action existed under the Hazardous Sites Cleanup Act, noting the significance of the "any other person" language. *Smith v. Weaver,* 665 A.2d 1215, 1221 (Pa.Super.1995).

◼ As interpretation of IPRRA is a matter of state law, relating to which no Rhode Island precedent exists, this Court respectfully certifies the question to the Rhode Island Supreme Court.

*Hazardous Waste Management Act*

Defendants have also argued that HWMA contains no private cause of action. The liability portion of HWMA reads:

(a) Any person who shall violate the provisions of this chapter through the transportation, storage, or disposal of hazardous wastes in a manner or location not authorized by this chapter or the rules and regulations promulgated pursuant hereto, or who shall have caused the unauthorized transportation, storage, or disposal of hazardous wastes shall be absolutely liable for the cost of containment, cleanup, restoration, and removal of the hazardous wastes, and for all damages, losses, or injuries, including environmental, which result directly or indirectly from the discharge.

(b) Proceedings brought pursuant to this section shall be instituted by filing a complaint in the superior court.

(c) The state of Rhode Island, by and through the department of environmental management, is the trustee of the air, water, fish, and wildlife of the state. An action brought pursuant to the provisions of this chapter with respect to environmental damage may be brought by the attorney general or the director of the department of environmental management in the name of the state as trustee for those natural resources.

(d) The court may award treble the amount of the aforementioned costs, damages, losses, or injuries whenever it finds that a person has stored, disposed, or transported hazardous wastes in violation of this chapter or the rules and regulations promulgated pursuant hereto in a wilful and knowing manner.

R.I.Gen.Laws § 23–19.1–22. Another section of the statute discusses enforcement:

The superior court for Providence county shall have jurisdiction to enforce the provisions of this chapter and any rule, regulation, or order issued pursuant thereto. Proceedings for enforcement may be instituted and prosecuted in the name of the director, and in any proceeding in which injunctive relief is sought, it shall not be necessary for the director to show that, without such relief, the injury which will result will be irreparable, or that the remedy at law is inadequate.

R.I.Gen.Laws § 23–19.1–15.

The Rhode Island Supreme Court has addressed the question of a private right of action in HWMA very briefly in an unpublished order. *Stoutenburgh v. Dierauf*, No. 90–194–Appeal (R.I. Dec. 13, 1990). The complete order states:

This case came before the court for oral argument December 6, 1990 on appeal from the granting of summary judgment in favor of Albert Kyle, one of the defendants, against whom suit was brought in the Superior Court for violation of the state Hazardous Waste Management Act, G.L.1956 (1989 Reenactment) § 23–19.1–1 et seq.

After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that as a matter of law the statute does not provide a private right of action for violation of this act, but only for proceedings to be brought in the name of the Director of the Department of Environmental Management and/or by the Attorney General on behalf of the state.

Consequently, the plaintiffs' appeal is denied and dismissed. The summary judgment entered in the Superior Court is hereby affirmed.

Entered as an Order of this Court this 13th day of December 1990.

[Signed by the Clerk].

The lower court's decision in *Stoutenburgh* was not written, so this unpublished order is the only record available regarding that case. The precedential value of this unpublished order is unclear, as Rhode Island has no codified rule regarding the precedential effect of such orders.

The Department of Environmental Management (DEM), the state agency that administers hazardous waste regulation, did not submit an *amicus curiae* brief under Rhode Island Supreme Court Rule 16(f) in *Stoutenburgh*. Therefore, the Supreme Court did not have an opportunity to consider the agency's interpretation of HWMA. As the Supreme Court has frequently stated, "the interpretation given a statute by the administering agency is entitled to great weight." *Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679 (R.I.1985); *see also Defenders of Animals, Inc. v. Dep't of Environ. Mgmt.*, 553 A.2d 541, 543 (R.I. 1989).

Subsequent to the *Stoutenburgh* order, a federal district court opinion addressed the enforcement of HWMA in *Pine v. Shell Oil Co.*, 1993 WL 389396 (D.R.I.1993). The section of the statute at issue reads, "Proceedings for enforcement may be instituted and prosecuted in the name of the director...." R.I.Gen.Laws § 23–19.1–15. The *Pine* court stated:

Section 23–19.1–15 does not charge the Director of RIDEM with exclusive responsibility for bringing suit to enforce HWMA. The use of the word "may" in other Rhode Island statutes has been in-

terpreted as directory and not mandatory. Section 23–19.1–20 requires a liberal interpretation and construction of HWMA. It is clear that the Rhode Island General Assembly intended to protect the environment and the public health and safety when adopting HWMA. The enforcement of HWMA is not exclusively in the director of environmental management.

*Id.* at \*4 (citations omitted). Although one of the plaintiffs in the *Pine* case was the Rhode Island Attorney General, the court did not rely on the section of the statute that states, "An action brought pursuant to the provisions of this chapter with respect to environmental damages may be brought by the attorney general or the department of environmental management in the name of the state as trustee for those natural resources." R.I.Gen.Laws § 23–19.1–22(c). This section of the statute would not have expressly authorized the other plaintiff in the case (the director of the Rhode Island Department of Transportation, a different state agency) to seek recovery for its investigation and remediation costs at the contaminated site. *Pine,* 1993 WL 389396, at \*1. Obviously, however, the federal district court is not the ultimate authority on matters of state law.

*Gryguc v. Bendick,* 510 A.2d 937 (R.I. 1986), is the only other case known to this Court which was brought under HWMA. In that case, neighbors of a hazardous waste treatment facility brought suit under a different section of the same statute because they did not receive notice of a permit issued to the facility. *Id.* at 937–38. The court dismissed the suit because the plaintiffs did not live sufficiently close to the facility to be entitled to notice under the statute. *Id.* at 939–40. Although the suit was brought under the permit section of the statute, R.I.Gen.Laws § 23–19.1–10, it may be significant that the court did not dismiss the suit based on the absence of a cause of action.

In construing a statute, this Court must effectuate the intent of the legislature. *Chester v. aRusso,* 667 A.2d 519, 522 (R.I. 1995). However, as the Rhode Island legislature keeps no record of its legislative history, legislative intent must be gleaned from the statute itself. One section of the statute reads, "The provisions of this chapter shall be interpreted and construed liberally in aid of its declared purpose." R.I.Gen.Laws § 23–19.1–20. The statute's declaration of purpose refers to protecting the environment and public health but does not indicate whether the legislature envisioned private parties suing under this statute. R.I.Gen. Laws § 23–19.1–3. The liability section of HWMA, which is at the heart of the present case, holds responsible parties strictly liable for all damages, losses, or injuries which result directly or indirectly from an improper discharge. R.I.Gen.Laws § 23–19.1–22. If no private right of action exists under HWMA, then it is unclear how individuals who have been harmed are to be compensated for the damages and injuries discussed in the liability section. The statute contains no provision for private parties to petition the state to receive compensation for damages and injuries. Interestingly, in a report to the United States Congress, the Superfund Section 301(e) Study Group stated that Rhode Island had created a statutory private cause of action for personal injury due to hazardous wastes. Superfund Section 301(e) Study Group, Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies, 97th Cong., 2d Sess., Serial No. 12 (Comm.Print 1982).[4] Although clearly not binding, this report indicates how some experts in the field interpreted the plain language of HWMA.

On the other hand, parts of HWMA refer specifically to suits brought by the state. The enforcement section, R.I.Gen.Laws § 23–19.1–15, discusses only suits by the director of DEM ("Proceedings for enforcement may be instituted and prosecuted in the

---

**4.** The pertinent portion of the report states, "Several state statutes reiterate the availability of common law remedies, but only four states have created private statutory causes of action for personal injury due to hazardous wastes. [See Appendix E]. Two of these states, North Dakota and Rhode Island, have created a private cause of action for personal injury that reflects a negligence *per se* approach.... The Rhode Island Hazardous Waste Management Act imposes liability for 'all damages, losses, or injuries' resulting from disposal of hazardous waste in an authorized manner or location." *Id.* at 75 (footnotes omitted).

name of the director. . . ."), which would seem to indicate that the legislature did not envision suits by other parties. Under the liability section, R.I.Gen.Laws § 23–19.1–22(c), however, the statute provides that suits may be brought by the director of DEM or the attorney general, even though the attorney general was not mentioned in the enforcement section. Both sections use the word "may," which could imply that suits may be brought by others as well. Moreover, the enforcement section states that the state superior court *shall* have jurisdiction to enforce the statute. However, whenever a HWMA claim is pendent to a federal question claim, as in this case, a federal court has jurisdiction over the HWMA claim. Therefore, the state superior court's jurisdiction is clearly not exclusive. The word "may" in the sentence relating to suits by the DEM director is certainly less restrictive than the word "shall" in the jurisdiction sentence. R.I.Gen.Laws § 23–19.1–15. Since "may" is less mandatory than "shall," it seems that the DEM director's cause of action also would not be exclusive.[5]

In addition, the part of the liability section that states that actions may be brought by the attorney general or DEM director refers only to suits for recovery for *environmental* damage, such as injury to the state's wildlife and natural resources. R.I.Gen.Laws § 23–19.1–22(c). However, HWMA imposes liability for "all damages, losses, or injuries, including environmental, which result directly or indirectly from the discharge." R.I.Gen.Laws § 23–19.1–22(a). The phrase "including environmental" indicates that nonenvironmental damages, such as property damage or personal injury, are also recoverable.

The statute leaves unclear the question of who may bring suit for nonenvironmental damages. Interestingly, the statute sets up an environmental response fund, providing that: "The fund shall consist of such sums as the state may, from time to time, appropriate, or sums recovered by any action brought under the authority of this chapter and are hereby appropriated to the director for the following purposes. . . ." R.I.Gen.Laws § 23–19.1–23. If the sentence intends that all damages recovered under HWMA must be deposited in the environmental response fund, then the purpose of a private cause of action would be vitiated, since no private party could keep a successful monetary judgment. However, if no private cause of action exists, then this section may conflict with the liability provision. Although the liability section provides for recovery of "all damages, losses, or injuries," R.I.Gen.Laws § 23–19.1–22(a), the money in the fund may be used for only six enumerated purposes, none of which include compensation for damages or injuries of private parties, R.I.Gen.Laws § 23–19.1–23(1)–(6). If a private cause of action exists under HWMA but only judgments in those suits brought by the state are to be deposited into the fund, then the fund's limitations seem logical because private parties would be able to receive compensation by bringing their own suits.

The liability section provides for treble damages when a defendant improperly disposed of hazardous waste willfully or knowingly. R.I.Gen.Laws § 23–19.1–22(d). However, HWMA also contains criminal and civil penalty provisions. R.I.Gen.Laws § 23–19.1–17, § 23–19.1–18. It has been argued that if only the state may sue under the liability section, the treble damages penalty is duplicative of the state's power to levy civil and criminal penalties under R.I.Gen.Laws § 23–19.1–17 and § 23–29.1–18, thereby rendering it effectively meaningless. John Langlois, "J'Adoube: Private Rights of Action

---

5. I note that the enforcement section, § 23–19.1–15, was part of the originally enacted version of HWMA, which referred only to permit requirements, civil penalties, and emergency injunctions. R.I.Pub.L. Ch. 229, § 1 (1978). The permit requirements, civil penalties, and emergency injunctions clearly must be enforced by DEM, and no private cause of action has been argued under those provisions in this case. The legislature added the liability section, § 23–19.1–22, under which Plaintiff has sued in the present case, later. R.I.Pub.L. Ch. 265, § 2 (1979). Arguably, the legislature did not intend § 23–19.1–15 to apply to suits under the liability section. That might explain why the legislature then added subsection (c) in the liability section, which allows the DEM or the attorney general to sue for environmental damages. R.I.Pub.L. Ch. 403, § 1 (1984). Otherwise, subsection (c) appears both to be made redundant by and to be more limited than § 23–19.1–15.

Under the Rhode Island Hazardous Waste Management Act," 39 *R.I.Bar.J.* 9 (June 1991).

Judicial interpretation of other, similar state environmental laws could shed light on the present question. Like HWMA, the New Hampshire Hazardous Waste Management statute holds hazardous waste disposers strictly liable for containment and remediation costs directly or indirectly resulting from the contamination. N.H.Rev.Stat.Ann. § 147–A:9(I). The New Hampshire statute also states: "The attorney general may bring an action to recover costs of containment, cleanup, or removal incurred by the division of waste management, the state, or both." N.H.Rev.Stat.Ann. § 147–A:9(II). The New Hampshire Supreme Court held that a private right of action existed under the statute, stating, "If such a cause of action is appropriate to compensate the general public for the cost of cleanup that it would otherwise bear in the interest of public health and safety, a similar cause of action is appropriate to compensate a private or property-owning plaintiff for the acute damage and injury that can result from unlicensed disposal." *Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 503 A.2d 823, 828–29 (1986).

North Carolina's Oil Pollution and Hazardous Substances Control Act also holds parties strictly liable for damages resulting from contamination. N.C.Gen.Stat. § 143–215.93. The North Carolina Court of Appeals held that this strict liability provision encompassed a private cause of action. *Wilson v. McLeod Oil Co.*, 95 N.C.App. 479, 383 S.E.2d 392, 398 (1989), *aff'd in part*, 327 N.C. 491, 398 S.E.2d 586 (1990). The relevant statutory section states: "Any person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry, subject to the exceptions enumerated in G.S. 143–215.83(b)." N.C.Gen.Stat. § 143–215.93. Although this section does not discuss who may bring suit under the statute, the court found a private cause of action. *Wilson*, 383 S.E.2d at 398.

The New Jersey Spill Act states, "Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." N.J.Stat.Ann. § 58:10–23.11g(c)(1). A federal court held that this section authorized a private right of action. *Mayor & Council of Borough of Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039, 1053 (D.N.J.1993). The defendants in that case argued that, because the New Jersey Spill Act contained a provision for a Fund from which private parties could obtain reimbursement for cleanup costs, no additional private right of action could be implied. *Id.* at 1052. The court held that, "[t]he existence of a mechanism for prompt payment of clean-up costs ... does not in and of itself undermine a private right of action under the Spill Act." *Id.* at 1052. As discussed above, Rhode Island's HWMA also provides for a fund. However, Rhode Island's situation may be even more conducive to a private right of action than New Jersey's because no HWMA provision allows private parties to seek compensation from the fund.

In contrast, the Missouri Court of Appeals has held that its state Hazardous Substance Emergency Statute contains no private right of action. *Yellow Freight System, Inc. v. ACF Indus., Inc.*, 882 S.W.2d 225, 228–29 (Mo.Ct.App.1994). The Statute reads:

> Any person having control over a hazardous substance shall be strictly liable *to the state of Missouri* for the reasonable cleanup costs *incurred by the state* as a result of the failure of such person to clean up a hazardous substance involved in a hazardous substance emergency in accordance with the requirements of sections 260.500 to 260.550 and rules promulgated by the department pursuant thereto. If such failure is willful, the person shall, in addition, be liable for punitive damages not to exceed triple the cleanup costs *incurred by the state.*

Mo.Ann.Stat. § 260.530. Unlike HWMA, however, the Missouri statute repeatedly refers to defendants' liability to the *state*, mak-

ing the exclusion of private plaintiffs very clear.

Indications of the Rhode Island legislature's intent in passing HWMA can also be gleaned from the recent passage of IPRRA. The liability section of IPRRA reads, "the state of Rhode Island *reaffirms* the applicable provisions of chapter 23–19.1 [HWMA], section 42–12 and chapter 46–13.1 and defines the following parties as responsible parties which are strictly, jointly and severally liable for the actual or threatened release of any hazardous material at a site...." R.I.Gen.Laws § 23–19.14–6 (emphasis added). The explanation of IPRRA by the Legislative Council states that this act *"clarifies* the environmental liability associated with spills and releases of hazardous materials." R.I.S. 612, Ch. 95–187 (1995) (emphasis added). These phrases indicate that the liability section of IPRRA was intended to clarify, not change, the liability under HWMA. Thus, the Rhode Island Supreme Court's decision in this case regarding the interpretation of IPRRA could influence whether a private cause of action exists under HWMA. *See Wheeler v. National School Bus Service,* 193 A.D.2d 998, 598 N.Y.S.2d 109, 110 (1993) (finding that subsequent amendment creating private right of action was intended to clarify previous law, and thus previous law had an implied private right of action).

▋ Because the existence of a private right of action under HWMA is wholly a question of state law, this Court respectfully certifies this question to the Rhode Island Supreme Court.

*CONCLUSION*

For the reasons described above, Defendants' motion to dismiss Counts VI and VIII cannot be granted on the basis of sovereign immunity or improper retroactivity. This Court's final ruling on Defendants' motion is reserved pending a determination by the Rhode Island Supreme Court whether a private cause of action exists under HWMA or IPRRA.

SO ORDERED.

*CERTIFICATION ORDER*

The United States District Court for the District of Rhode Island hereby certifies to the Rhode Island Supreme Court two questions of Rhode Island law. These questions may be determinative of claims pending in the above-referenced action and it appears to this Court that there is no controlling precedent in the decisions of the Rhode Island Supreme Court.

**A. Certified Questions**

Pursuant to Rhode Island Supreme Court Rule 6, the following questions are certified to the Rhode Island Supreme Court:

1. Does the Industrial Property Remediation and Reuse Act, R.I.Gen.Laws § 23–19.14–1 *et seq.* (IPRRA), authorize a private cause of action against persons defined as responsible parties under IPRRA?

2. Does the Hazardous Waste Management Act, R.I.Gen.Laws § 23–19.1–1 *et seq.* (HWMA), authorize a private cause of action against persons who may be liable under § 23–19.1–22 of HWMA?

**B. Statement of Relevant Facts**

Charter International Oil Company ("Charter") brought suit in the United States District Court for the District of Rhode Island against several defendants, including the United States and Texaco Inc., to recover the costs of remediating the release and disposal of hazardous substances and petroleum products at a site Charter currently owns in Tiverton, Rhode Island. The United States and predecessors or subsidiaries of Texaco, Inc. formerly owned portions of this sites which were operated as bulk petroleum storage and distribution facilities.

Charter seeks remediation costs, damages for injuries to real property, injunctive relief, and other compensatory damages. Charter's claims against the United States include claims for damages and equitable relief under IPRRA and HWMA. The United States moved for judgment on the pleadings on these two claims, arguing *inter alia* that these State Acts do not provide for a private

cause of action. Texaco Inc. has joined in the United States' motion. Charter objected.[1]

This Court respectfully certifies the above questions to the Rhode Island Supreme Court.

SO ORDERED.

---

1. The facts underlying this case and the reasons for certification of these questions are more fully explained in this Court's Memorandum and Order filed May 7, 1996.